UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BRENDA MELENDEZ, as Parent and Natural
Guardian of J.C.M., and BRENDA MELENDEZ,
individually,

Plaintiff,

-against-

MEISHA PORTER, in her Official Capacity as
the Chancellor of the New York City
Department of Education, and the NEW YORK
CITY DEPARTMENT OF EDUCATION,

Defendants.

**MEMORANDUM & ORDER
21-CV-579 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court are Magistrate Judge Bloom's Report
and Recommendation ("R&R") on the parties' cross-motions for
Summary Judgment, and Plaintiff's Objections to that R&R. (*See*
Pl.'s Mot. for S.J. (Dkt. 34); Defs.' Mot. for S.J. (Dkt. 36); May
15, 2023 R&R (Dkt. 41) ("R&R"); Pl.'s Objections to R&R (Dkt.
42).) For the reasons stated below, the R&R is ADOPTED in full.

## I.   BACKGROUND

The court assumes familiarity with the background of this civil
case brought against the New York City Department of Education
(the "DOE") and its Chancellor, pursuant to the Individuals with
Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1401 *et seq.*, in
light of Magistrate Judge Bloom's lengthy and enlightening de-
scription of the foregoing factual and procedural history. (R&R
at 2-11.)

## II.  LEGAL STANDARD

A district court "may accept, reject, or modify, in whole or in part,
the findings or recommendations made" by a magistrate judge in

1

an R&R. 28 U.S.C. § 636(b)(1)(C). Where a party timely and specifically objects, the court conducts a *de novo* review of the contested portions of the R&R. *Fischer v. Forrest*, 286 F. Supp. 3d 590, 601 (S.D.N.Y. 2018). "However, when a party makes only conclusory or general objections, or simply reiterates his original arguments, the court reviews the report and recommendation strictly for clear error." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 715 (S.D.N.Y. 2020).[1]

### III. DISCUSSION

Plaintiff raises four objections to the R&R. (*See generally* Pl.'s Obj.) The court addresses each objection in turn below.

Plaintiff first objects on the basis that "the Magistrate Judge erred by basing much of her decision on irrelevant and immaterial information pertaining to other Students and non-parties— resulting in pure speculation and conjecture." (Pl.'s Obj. at 2.) Plaintiff asserts that while it may have been permissible for the State Review Officer (or "SRO") to take into consideration such information at the administrative review level, it is not so for a federal court deciding a motion for summary judgment. (*Id.* at 3.) This objection lacks merit because the Magistrate's decision was based on sound legal analysis rather than "irrelevant and immaterial information." The information relied on by the Magistrate that the Plaintiff dismisses as "rank hearsay" is actually derived from a hearty mélange of case law from within the Second Circuit. (*See, e.g., id.* at 13-14 (citing *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 528 (2d Cir. 2020); *Neske v. Porter*, No. 21-CV-10363 (VEC), 2022 WL 3290561, at *4 (S.D.N.Y. Aug. 11, 2022); *Ferreira v. N.Y.C. Dep't of Educ.*, No. 19-CV-2937 (JMF), 2020 WL 1158532, at *2 n.1 (S.D.N.Y. Mar. 6, 2020); *Donohue v. N.Y.C. Dep't of Educ.*, No. 20-CV-1942 (ALC)

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

(KHP), 2021 WL 4481344, at *3-5, 10 (S.D.N.Y. Sept. 30, 2021)).)

Moreover, although the Magistrate conducted an independent review of the record as required, she was also compelled to give "due weight to administrative proceedings" and be "mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." (R&R at 11 (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir. 2012)).) Indeed, "[d]eference [to an SRO's decision] is particularly appropriate when [an SRO's] review has been thorough and careful." *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998). Where, as here, the SRO's decision was thorough, careful, and reliant on the SRO's specialized knowledge and experience, a federal court should weigh that determination in the course of reaching its own conclusions. Therefore, to the extent the Magistrate Judge deferred to the SRO's understanding of how the facts of several similar cases were pertinent in adjudicating the instant matter, (*see e.g.*, R&R at 13 ("As noted in SRO Bate's decision . . .")), she was well within her authority to do so. For these reasons, the Plaintiffs first objection is overruled.

The Plaintiff next objects on the basis "that the Magistrate erred in finding plaintiff's behavior was uncooperative and supported a reduction in the relief requested." (Pl.'s Obj. at 4.) This objection "simply reiterates [Plaintiff's] original arguments." *Piligian*, 490 F. Supp. 3d at 715. In Point One of her motion for summary judgment, Plaintiff argued at length that "Plaintiff was cooperative with DOE in the IEP process," (Pl.'s Mot. at 8), and thus "the reduction of tuition by 33% was inappropriate." (*Id.* at 7.) The portion of the R&R relevant to this objection is thus reviewed only for clear error. The court finds no clear error, and the Plaintiff's second objection is overruled.

The Plaintiff's third objection, that the Magistrate "improperly dismissed Plaintiff's arguments about DOE's responsibilities in the IEP process," (Pl.'s Obj. at 8), also "simply reiterates [Plaintiff's] original arguments." *Piligian,* 490 F. Supp. 3d at 715. (*See* Pl's Mot. at 17-19.) The portions of the R&R in which the Magistrate (1) independently determined that the DOE was not obligated to provide an *in-person* physician for the IEP meeting, (R&R at 16-17), (2) independently determined that DOE did not make procedural errors in scheduling the IEP meetings, (*id.* at 16), and (3) independently determined that the school district made appropriate efforts to secure the parent's participation in the IEP meeting, (*id.*), are thus reviewed solely for clear error. The court finds no clear error relating to these portions of the R&R, and this objection is overruled.

Much like Plaintiff's second and third objections, Plaintiff's fourth objection fails to raise a new argument. Point Three of her motion for summary judgment states much the same concern as her fourth objection: she contends in both instances that as a matter of law, "the equities cannot favor [the Department of Education], as it has conceded its obligation to provide" a free and appropriate public education consisting of special education and related services designed to meet the child's needs, also known as a "FAPE." (Pl.'s Mot. at 21-22.) Here too, the simple recycling of an argument does not warrant *de novo* review of an able Magistrate's conclusions by the district court. The court thus reviews the relevant portion of the R&R for clear error. Finding none, Plaintiff's fourth objection is overruled.

4

**IV. CONCLUSION**

Finding no merit to any of Plaintiff's objections, the court ADOPTS IN FULL the Magistrate Judge's well-reasoned R&R.

SO ORDERED.

Dated:   Brooklyn, New York
         July 5, 2023

                                    s/Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
BRENDA MELENDEZ, as Parent and
Natural Guardian of J.C.M., and
BRENDA MELENDEZ, individually,

                          Plaintiff,

      -against-

MEISHA PORTER, in her Official Capacity
as the Chancellor of the New York City
Department of Education, and the
NEW YORK CITY DEPARTMENT OF
EDUCATION,

                      Defendants.
--------------------------------------------------------X

                    **REPORT AND RECOMMENDATION**
                       **21 CV 579 (NGG)(LB)**

**BLOOM, United States Magistrate Judge:**

     Plaintiff Brenda Melendez brings this action individually and as parent and natural

guardian of her minor son, J.C.M., pursuant to the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. §§ 1401 *et seq.* Plaintiff seeks to overturn the New York State Education

Department's administrative decision to reduce funding for J.C.M.'s tuition at the International

Institute for the Brain ("iBrain") for the 2018-2019 school year. Plaintiff moves for summary

judgment, ECF No. 34. Defendants, the New York City Department of Education (the "DOE")

and former Chancellor Meisha Porter, cross-move for summary judgment. ECF No. 36. The

Honorable Nicholas G. Garaufis referred the parties' motions to me for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons set forth herein, I respectfully

recommend that plaintiff's motion for summary judgment should be denied, and defendants'

cross-motion for summary judgment should be granted.

1

# BACKGROUND

### I.      Overview of the IDEA

One of the IDEA's central purposes is to ensure that a child with disabilities receives a "Free and Appropriate Public Education" (FAPE) consisting of "special education and related services designed to meet [the child's] needs." 20 U.S.C. § 1400(d)(1)(A)-(C). In order to receive federal funding under the IDEA, New York State must make available a FAPE to all children in the state with one or more qualifying disabilities. 20 U.S.C. § 1412(a)(1)(A). The DOE is the local agency responsible for providing a FAPE to all disabled children in New York City. 20 U.S.C. § 1412; M.P.G. ex rel. J.P. v. New York City Dep't of Educ., No. 08-CV-8051, 2010 WL 3398256, at *3 (S.D.N.Y. Aug. 27, 2010). The DOE ensures that the special education and related services required by the IDEA meet federal and state requirements and are provided in conformity with an Individualized Education Program ("IEP"). 20 U.S.C. § 1401(9).

The DOE creates an IEP for each student prior to the start of every school year. 20 U.S.C. § 1414(d). The IEP consists of an evaluation of the student's needs and a program of instructions that outlines "the child's present educational performance, establishes annual short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." Honig v. Doe, 484 U.S. 305, 311 (1988). The IEP is developed by an "IEP team" consisting of the child's parents, teachers, school district representatives, and in some cases, the child. 20 U.S.C. § 1414(d)(1)(B); N.Y. Educ. Law §§ 2853(4), 3602. In New York, an IEP team is also referred to as the Committee on Special Education ("CSE") or the CSE team. See N.Y. Educ. Law § 4402(1)(b)(1).

2

New York has a two-tiered administrative review process to address disputes regarding the child's IEP or provision of a FAPE. A parent who believes that their child was not offered a FAPE may file a "due process complaint" ("DPC") enumerating their challenges and requesting an impartial hearing before an Impartial Hearing Officer ("IHO"). 20 U.S.C. §§ 1415(b)(6), 1415(f)(1)(A); N.Y. Educ. Law § 4404(1)(a); 8 N.Y.C.R.R. 200.5(i)-(j); J.L. v. New York City Dep't of Educ., No. 15-CV-1200, 2016 WL 6902137, at *1 (E.D.N.Y. Nov. 22, 2016) (summarizing New York's administrative appeals process). Either party can appeal the IHO's decision to a State Review Officer ("SRO"). Id. A party aggrieved by the SRO's decision can seek judicial review in state or federal court. 20 U.S.C.A. § 1415(i)(2)(A).

A parent who believes that their child's IEP fails to comply with statutory requirements may, at their own financial risk, unilaterally remove their child from the IEP's proposed public school and place their child in a private school that they believe is appropriate for their child's needs. 20 U.S.C. § 1412(a)(10)(C); see Ventura de Paulino v. New York City Dep't of Educ., 959 F.3d 519, 525 (2d Cir. 2020) ("[W]hen the parents unilaterally enrolled the students at iBrain, the parents did so at their own financial risk."). The parent may seek retroactive reimbursement for the private school tuition and cost of related services from the local school district. Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 (2d Cir. 2005).

The Supreme Court has established a three-pronged test (known as the Burlington-Carter test) to determine whether the school district must reimburse the parent for the unilaterally selected educational services. Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 369-70 (1985). First, the aggrieved party must establish (1) whether the school district denied the student a FAPE, and (2) whether the unilateral placement selected by the parent is appropriate. Id. If these two prongs are satisfied, the court must then consider (3) whether the equities warrant

3

reimbursement to the parent. Id.; Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, 12 (1993).

## II.    Factual History[1]

Plaintiff is the parent and natural guardian of J.C.M., a thirteen-year-old[2] student with a traumatic brain injury. R. at 25, 1099. J.C.M. has been diagnosed with multiple medical conditions related to his brain injury, including cerebral palsy, epileptic seizure disorder, and cortical visual impairment. R. at 8, 1368. He has global impairments that render him non-ambulatory and non-verbal, and adversely affect his educational abilities and performance. R. at 8–9, 1398–1400. He requires adult support for all activities of daily living and a high degree of individualized attention and support throughout the school day. ECF No. 35, Plf.'s Mem. of Law at 1–2; R. at 1105, 1154.

In January 2018, Fabiana Czemerinski, the chairperson[3] of J.C.M.'s CSE team, met with program administrators of the International Academy of Hope ("iHope"), J.C.M.'s placement, to discuss scheduling IEP meetings for J.C.M. and other students at iHope. R. at 665. Ms. Czemerinski and iHope agreed that the IEP meetings would be held in March and April of that year at the CSE office. R. at 666-67. Ms. Czemerinski and iHope also agreed that the meetings would be held during the day so that iHope staff and parents could participate in the meetings. R. at 667.

On January 10, 2018, plaintiff signed a consent form in English that states, "if you would like to receive [DOE] notices via email please sign the consent on this form…", but did not

---

[1] The following facts are taken from the administrative record [ECF No. 24], and the parties' motions, [ECF Nos. 34, 36, 38–39]. The facts are undisputed unless otherwise stated. The administrative record has been Bates stamped with "DOE [page number]." The Court will cite to the record as "R. at" with the corresponding Bates stamped number, referencing the parties' motions.

[2] J.C.M. was nine-years old during the 2018-2019 school year. R. at 25.

[3] In her role as chairperson, Ms. Czemerinski supervised J.C.M.'s CSE team and coordinated directly with iHope when J.C.M. was there. R. at 1294–95.

provide an email address as requested on the form. R. at 1103. Plaintiff's native language is

Spanish, and she often requires a Spanish interpreter to communicate in English. R. at 323, 622,

678.

In preparation for the IEP meeting, a CSE social worker conducted a classroom

observation of J.C.M. on January 11, 2018. R. at 668. The CSE team scheduled two other

evaluations for J.C.M.—a "social history update" and an adaptive behavioral evaluation[4]—and

sent plaintiff a notice regarding these evaluations on February 9, 2018. R. at 669. The CSE team

conducted both evaluations with plaintiff present on March 29, 2018. R. at 669, 1117–33.

On February 14, 2018, the CSE sent plaintiff a notice in English and Spanish stating that

J.C.M.'s IEP meeting was scheduled for April 10, 2018 at 10:00 a.m. at the CSE office. R. at

1107–11. On or around February 27, 2018, plaintiff cancelled the meeting. R. at 1296. The CSE

sent plaintiff a notice in English and Spanish on the same date, stating that the IEP meeting was

rescheduled for April 19, 2018 at 1:00 p.m. at the CSE office. R. at 1112–16. The February 14

and February 27 notices also provide that plaintiff can request the participation of a school

physician, and that the request must be made in writing at least 72 hours prior to the IEP

meeting. R. at 1108, 1113.

Around this time, Ms. Czemerinski began noticing that other parents of iHope students

were cancelling scheduled IEP meetings, and she called iHope administrators to "express [the

CSE's] concerns." R. at 33, 675. During the call, iHope "indicated that their hands were tied," R.

at 674–675, and afterward sent Ms. Czemerinski a copy of a memorandum that iHope's board

chairman had sent to parents on April 6, 2018, stating: "[iHope has] been informed that certain

parents have been advised by their attorney to cancel IEP Meetings scheduled for the remainder

---

[4] The record alternately refers to this evaluation as a "Vineland" evaluation. R. at 668–69, 1295–96.

of April and May.... [W]hether you are being represented by Patrick Donohue, his staff or any other attorney for that matter, they are your lawyer(s) and they do not represent iHope Academy. Their strategy towards the IEP meetings may differ from the school's." R. at 1277–80.

On April 13, 2018, plaintiff cancelled the IEP meeting set for April 19, 2018 and stated that she would contact the CSE to reschedule within one week. R. at 34, 1139, 1297. A CSE team member called plaintiff to reschedule the IEP meeting on April 17, 2018, but plaintiff did not answer, so the team member left a voice message. Id. On April 18, 2018, the CSE sent a notice in English and Spanish noting that it had not been able to reach plaintiff, but that her request to reschedule the IEP meeting was granted and that the meeting would be held on June 8, 2018 at 9:00 a.m. R. at 1139–1144, 1297. On April 19, 2018, plaintiff sent the CSE a letter in English and Spanish requesting that the IEP meeting be scheduled after 3:00 p.m. on a weekday (Monday through Thursday), that it take place at iHope, and that a physician participate in person at the meeting. R. at 34, 682–83, 994, 1451–54. Plaintiff asked that the CSE send a "few proposed dates and times" by email or regular mail, because she "prefer[ed] not to schedule any meetings through the telephone." R. at 1453. Plaintiff's attorney, Patrick Donohue, is copied on the letter. R. at 1454.

On or around April 27, 2018, the CSE sent a notice in English and Spanish rescheduling the IEP meeting for Tuesday, May 15, 2018 at 3:15 p.m. at the CSE office. R. at 1145–49. On April 30, 2018, the CSE sent another notice in English and Spanish confirming the IEP meeting for 3:15 p.m. on May 15, 2018. R. at 1150–52. The notice states that the CSE denied plaintiff's request to hold the meeting at iHope, and that a physician would participate but not in person. R. at 1145–46, 1150–52.

On May 3, 2018, a CSE team member called plaintiff to remind her of the IEP meeting

scheduled for May 15, 2018 and to request J.C.M.'s updated progress reports, but plaintiff did

not answer, so the team member left a voice message. R. at 1297. On May 10, 2018, plaintiff's

attorney, Patrick Donohue, sent a letter addressed to Ms. Czemerinski requesting that the May

15, 2018 meeting not proceed as scheduled because the "proposed date and time does not work"

for plaintiff and requested that the CSE email plaintiff additional proposed dates and times. R. at

1455. Mr. Donohue also stated that plaintiff did "not waive the right to have" a physician

participate in the meeting and that "the CSE should ONLY propose dates whereby the DOE

School Physician can participate in person." R. at 1456.

On May 14, 2018, a CSE team member called plaintiff a second time to remind her of the

May 15, 2018 meeting and request updated progress reports. R. at 1297–98. Plaintiff did not

answer and the team member was unable to leave a voice message. Id. On May 15, 2018, the

CSE team member called plaintiff a third time to remind her about the IEP meeting and request

updated progress reports, but plaintiff did not answer, and the team member could not leave a

voice message. R. at 1298. The CSE proceeded with the IEP meeting on May 15, 2018. R. at

687–88. Plaintiff and J.C.M.'s iHope providers did not participate in the meeting. R. at 1165,

1298. A physician participated in the IEP meeting by telephone. R. at 1028–29, 1298.

On June 4, 2018, plaintiff signed a contract for J.C.M.'s enrollment at iBrain for the

2018-2019 school year. R. at 1440–45. On June 18, 2018, the CSE sent plaintiff a notice of the

IEP that it had developed for J.C.M. for the 2018-2019 school year. R. at 1166–72. On June 21,

2018, plaintiff's attorney[5] sent a ten-day notice[6] notifying the DOE of plaintiff's intention to

---

[5] The letter is signed by William Frazier, chief of staff of the Brain Injury Rights Group.
[6] IDEA regulation requires that parents notify a school district at least ten business days before unilaterally placing their child at a non-public school. 34 C.F.R. § 300.148(d)(1)(ii).

unilaterally place J.C.M. at iBrain and arguing that because the CSE did not conduct a "full committee meeting" with a physician present, it did not offer J.C.M. a FAPE, and therefore plaintiff "has no choice other than to enroll [J.C.M.] at" iBrain. R. at 1457–58.

On or around July 10, 2018, plaintiff filed a DPC and requested an impartial hearing on (1) whether the DOE had denied J.C.M. a FAPE, (2) whether unilateral placement of J.C.M. at iBrain was appropriate, and (3) whether the equities favored direct reimbursement for the education and related services that J.C.M. would receive at iBrain.[7] R. at 10, 26–27.

III.    IHO Hearing & Decision

IHO Susan Lushing was assigned to hear the merits of plaintiff's claims.[8] R. at 27. An impartial hearing was held on July 8 and July 21, 2020, during which three witnesses testified by affidavit subject to cross-examination, and both parties offered documents as evidence. Id. On September 21, 2020, IHO Lushing issued a Findings of Fact and Decision ("FOFD"), in which she ruled that the DOE had conceded that it had denied J.C.M. a FAPE for the 2018-2019 school year, that iBrain was an appropriate unilateral placement, and that equitable considerations weighed against full reimbursement of J.C.M.'s tuition due to plaintiff's "failure to fully cooperate with the CSE in developing an IEP...." R. at 11, 27, 43–44.

---

[7] Plaintiff also sought a determination whether iBrain was a sufficient "pendency placement" under the IDEA. R. at 35. The IHO found that she lacked jurisdiction to rule on the issue, R. at 36, and plaintiff appealed her decision to the SRO. R. at 14. The SRO affirmed the IHO's decision and dismissed plaintiff's appeal as lacking in merit based on the Second Circuit's decisions in Ventura de Paulino and Neske v. New York City Dep't of Educ., 2020 WL 5868279 at *1 (2d Cir. Oct 2, 2021), both of which found that parents could not unilaterally place students at iBrain and receive pendency funding. R. at 15. The SRO noted that this Court had already applied the Ventura de Paulino decision to the instant case, finding that plaintiff "cannot...determine that [J.C.M.'s] pendency placement would be better provided somewhere else, enroll [him] in a new school, and then invoke the stay-put provision to force the school district to pay for the new school's services on a pendency basis." M. v. New York City Dep't of Educ., 2020 WL 4273907, at *7 (S.D.N.Y. July 24, 2020), reconsideration denied, 2020 WL 5117948 (S.D.N.Y. Aug. 31, 2020). The parties' instant motions do not raise this issue.

[8] There were three different IHOs assigned to the parent's various claims. ECF No. 24-1 at 11. IHO Lushing's decision on plaintiff's substantive claims is the only IHO decision at issue in the instant matter.

In weighing the equities, IHO Lushing found that plaintiff had cooperated with the DOE

in February and March of 2018, but that "cooperation ceased" thereafter. R. at 41. Specifically,

she found that plaintiff cancelled the IEP meetings scheduled for April 10 and 19, 2018 without

attempting to reschedule, and that plaintiff's cancellations coincided with a "rash of

cancellations" by parents of iHope students. R. at 33–34. She further found the memorandum by

iHope's board chairman to be "convincing evidence of a concerted effort," in which "the parents

had been advised by their attorney, Patrick Donohue, not to participate in the IEP process." R. at

33, 42.

IHO Lushing concluded that the CSE team had "tried very hard to accommodate"

plaintiff's requests and that her proffered reason for not participating in the IEP meeting on May

15, 2018—that the DOE had failed to require a physician's in-person attendance—was "a

manufactured excuse to obstruct the IEP process." R. at 42. IHO Lushing also noted that "[p]re-

COVID," telephonic appearances at IEP meetings were "widely used as a reasonable method to

obtain" a physician's participation. Id. Accordingly, IHO Lushing reduced the DOE's

reimbursement for J.C.M.'s tuition at iBrain by "about 33% or $48,000 because of parental

noncooperation" but declined to reduce reimbursement for transportation services. [9] R. at 43–44.

IV.    SRO Decision

Defendants appealed IHO Lushing's determination regarding the appropriateness of

J.C.M.'s unilateral placement at iBrain, and plaintiff appealed the decision to reduce

reimbursement due to equitable considerations.[10] R. at 21. The matter was assigned to State

---

[9] IHO Lushing found that transportation costs for J.C.M. amounted to $134,860.00 but could not identify the cost of
other related services in the administrative record.
[10] As to whether defendants had provided J.C.M. a FAPE, the SRO found that "[a]s the [school] district has not
cross-appealed from the IHO's determination that it failed to offer the student a FAPE for the 2018-19 school year
based upon the district's concession, that issue has become final and binding upon the parties and will not be further
discussed." R. at 18.

Review Officer ("SRO") Justyn P. Bates. R. at 23. After reviewing IHO Lushing's FOFD and

the administrative record, SRO Bates found that IHO Lushing had not erred in finding that iBrain

was an appropriate unilateral placement for J.C.M. and declined to disturb her determination on

equitable considerations and a reduction in the tuition award. Id. SRO Bates agreed with IHO

Lushing's reasoning that the iHope memorandum was a "'better explanation' for [plaintiff's]

refusal to cooperate with the CSE" and compelling evidence that plaintiff's decision to follow

the advice of her attorney and "not [] assist the CSE" aligned with a larger "concerted effort by"

other parents of students at iHope. R. at 23. As such, SRO Bates affirmed IHO Lushing's

conclusion that plaintiff's failure to cooperate was a "serious impediment" to the CSE

performing its legal obligations under the IDEA and that the equities were not in plaintiff's

favor, and concluded that a 33% reduction in the tuition award was a "reasonable exercise of her

sound discretion in this matter." Id.

V.    Procedural History

    Plaintiff commenced this action seeking federal review of SRO Bates's decision. ECF

No. 1. Plaintiff also moved for a preliminary injunction ordering defendants to comply with the

FOFD's order to immediately fund J.C.M.'s placement at iBrain for the 2018-2019 year. ECF

No. 5. On April 7, 2021, plaintiff withdrew her motion for a preliminary injunction after

receiving all payments pursuant to the FOFD. ECF No. 16. Plaintiff amended the complaint

seeking the Court's review of the remaining adverse portion of SRO Bates's decision. ECF No.

18; Fed. R. Civ. P. 15; IDEA § 1415(i) ("[t]he party bringing the action shall have 90 days from

the date of the Decision of the hearing officer to bring such an action, or if the State has an

explicit time limitation for bringing such action under this part [20 U.S.C.S. §§ 1411 et seq.], in

such time as the State law allows."); Education Law § 4404(3)(a) (providing that a party may

commence an action within four months of an SRO's decision). Defendants answered the amended complaint on June 3, 2021. ECF No. 21. Defendants filed a certified copy of the administrative record under seal on November 5, 2021. ECF No. 24.

Plaintiff now moves for summary judgment pursuant to Rule 56, ECF No. 34, and defendants cross-move for summary judgment. ECF No. 36. Plaintiff and defendants oppose each other's motions. ECF Nos. 36, 38–39.

## STANDARD OF REVIEW

A motion for summary judgment in an IDEA case is more akin to a "mechanism for reviewing a state's compliance with the procedures set forth in IDEA" than "an inquiry into possible disputed issues of fact." Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ., 397 F.3d 77, 83 n.3 (2d Cir. 2005) (collecting cases). In reviewing an administrative decision under the IDEA, a district court must review the administrative record in its entirety, hear additional evidence at the party's request, and make its determination based on a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C); Gagliardo v. Arlington Cent. Sch. Dist., F.3d 105, 112 (2d Cir. 2007).

A district court reviews an SRO's final determination under the "modified de novo review" standard. T.K. v. New York City Dep't of Educ., 779 F. Supp. 2d 289, 310 (E.D.N.Y. 2011). This standard of review requires the court to conduct an independent review of the administrative proceedings and establish whether "there has been compliance with the IDEA's process and the child's educational needs have been appropriately addressed." Wall by Wall v. Mattituck-Cutchogue Sch. Dist., 945 F. Supp. 501, 508 (E.D.N.Y. 1996). "[F]ederal courts reviewing administrative decisions must give 'due weight' to [administrative] proceedings, mindful that the judiciary generally 'lacks the specialized knowledge and experience necessary

to resolve persistent and difficult questions of educational policy.'" M.H. v. New York City

Dep't of Educ., 685 F.3d 217, 240 (2d Cir. 2012) (quoting Gagliardo, 489 F.3d at 113).

"Deference is particularly appropriate when [an SRO's] review has been thorough and careful."

Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 (2d Cir. 1998).

## DISCUSSION

The parties do not dispute that J.C.M. was denied a FAPE or that his unilateral placement

at iBrain was appropriate. Therefore, the only issue for the Court's review is whether SRO Bates

erred in his determination that the equities warrant a 33% reduction of the DOE's reimbursement

of J.C.M.'s tuition at iBrain. Plaintiff argues that the equities weigh in favor of full

reimbursement and that SRO Bates's decision affirming a reduction of the reimbursement award

should be reversed. Plf.'s Mem. of Law at 24–25. Defendants argue that SRO Bates did not err in

holding that the equities weigh against plaintiff due to her failure to cooperate with the DOE, and

his decision should be accorded deference. ECF No. 37, Defs.' Mem. of Law at 22.

When a school district fails to provide a student with a FAPE, and the student's unilateral

placement is appropriate, "the district court enjoys broad discretion in considering equitable

factors relevant to fashioning relief." Gagliardo, 489 F.3d at 112; Forest Grove Sch. Dist. v.

T.A., 557 U.S. 230, 246–247 (Even where a parent is entitled to reimbursement under the IDEA,

"courts retain discretion to reduce the amount of a reimbursement award if the equities so

warrant."). A court may consider various factors in weighing the equities, including whether

plaintiff's unilateral withdrawal was justified, whether the parent made their child available for

the school district's evaluation, whether the private school's tuition was reasonable, or whether

there was any fraud or collusion in generating the tuition to be charged to the school district or in

any other respect. E.M. v. New York City Dep't of Educ., 758 F.3d 442, 461 (2d Cir. 2014); 20

U.S.C. § 1412(a)(10)(C)(iii); 34 CFR 300.148(d). "Important to the equitable consideration is whether the parents obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA." C.L. v. Scarsdale Union Free Sch. Dist., 744 F.3d 826, 840 (2d Cir. 2014). Factors that the Court may consider in determining a parent's reasonableness include "whether the parents cooperated with the CSE (e.g., providing reports, attending the meeting, participating in the meeting); whether the parents timely notified the school district of their intent to place their child in a private school; …whether the parents or the DOE unreasonably delayed anything; and the appropriateness of the DOE's conduct…." GB v. New York City Dep't of Educ., 145 F. Supp. 3d 230, 257 (S.D.N.Y. 2015). Plaintiff bears the burden of establishing that the equities weigh in her favor. R.E. v. New York City Dep't of Educ., 694 F.3d 167, 185 (2d Cir. 2012).

I.      SRO Bates Did Not Err in Finding Against Plaintiff on Equitable Grounds

As noted in SRO Bates's decision and the FOFD, the circumstances of this case are strikingly similar to those in other cases where parents of students at iHope unilaterally moved their students to iBrain and sought retroactive reimbursement for iBrain's tuition and related costs for the 2018-2019 school year (collectively, the "iBrain cases"). See, e.g., Ventura de Paulino, 959 F.3d at 528 (identifying "approximately 23 cases" represented by the same counsel, in "which parents … transferred their children from iHope to iBrain for the 2018-2019 school year without the City's consent" and sought City funding for iBrain's educational services); see also Neske v. Porter, No. 21-CV-10363, 2022 WL 3290561, at *4 (S.D.N.Y. Aug. 11, 2022), reconsideration denied, No. 21-CV-10363, 2022 WL 16578963 (S.D.N.Y. Nov. 1, 2022) (considering "strong evidence that plaintiffs were part of an organized campaign to shift students from iHope to iBrain and to thwart the District's process for preparing IEPs for those students.").

Notably, Patrick Donohue and the attorneys at his firm, Brain Injury Rights Group ("BIRG"), are counsel of record in this case and represent the plaintiff parents in many, if not all of the iBrain cases. See, e.g., Ferreira v. New York City Dep't of Educ., No. 19-CV-2937, 2020 WL 1158532, at *2 n.1 (S.D.N.Y. Mar. 6, 2020), aff'd, No. 20-908, 2020 WL 8838249 (2d Cir. Nov. 4, 2020) (detailing the "curious" circumstances around the plaintiff's "abrupt transfer" from iHope to iBrain, including Donohue's history as founder of iHope, iBrain, and BIRG, and BIRG's representation of plaintiffs in other cases seeking funding at iBrain (citations omitted)).

In each of the iBrain cases where the parent sought review of equitable considerations, the court considered facts similar to those in this case and held that the equities did not weigh in the parent's favor. See, e.g., Donohue v. New York City Dep't of Educ., No. 1:20-CV-1942, 2021 WL 4481344, at *3–5, 10 (S.D.N.Y. Sept. 30, 2021) (finding that Patrick Donohue, plaintiff parent in the case, cancelled the initially scheduled IEP meeting, requested the meeting be held at iHope and on a weekday after 3:00 p.m. and not be rescheduled unless a physician participated in the meeting in person, and ultimately did not attend the meeting); Neske, No. 21-CV-10363, 2022 WL 3290561, at *2, 5–6 (finding that the plaintiff had requested a physician's in-person attendance, that Ms. Czemerinski's had testified that over 35 parents of iHope students had made the same request, that Patrick Donohue had advised iHope parents not to cooperate, and that the plaintiff ultimately did not attend the IEP meeting despite multiple attempts by the CSE "to arrange a mutually convenient time and place."); Maysonet v. New York City Dep't of Educ., No. 22-CV-1685, 2023 WL 2537851, at *4 (S.D.N.Y. Mar. 16, 2023) (affirming the SRO's reduction and finding that the CSE had repeatedly rescheduled the IEP meeting to secure plaintiff's participation, and that plaintiff's failure to provide the CSE progress reports and stated reason for not participating in the meeting—because the physician was going to attend

14

telephonically rather than in person—was "unreasonable behavior and a negative equitable consideration under the IDEA").

After conducting an independent review of the administrative record in this case, I reach the same conclusion. Plaintiff participated in the IEP process in February and March of 2018 but ceased cooperation thereafter. Plaintiff twice cancelled the IEP meeting scheduled for J.C.M. without attempting to reschedule. R. at 34, 1139–44, 1297. When she wrote to reschedule the meeting on April 19, 2018, plaintiff stated that she was only available on certain days and times and requested that the meeting take place at iHope and that a physician participate in person. R. at 682–83, 1451–54. The CSE rescheduled the IEP meeting to accommodate plaintiff's schedule and allowed the physician to attend telephonically. R. at 1145-45. The CSE attempted to confirm plaintiff's attendance and requested updated progress reports three times thereafter, to no avail. R. at 1455. Plaintiff's last communication to the CSE is a letter from her attorney, insisting that the CSE only propose dates where a physician could participate in person. R. at 1456. These facts are summarized in the FOFD and SRO Bates's decision affirming the FOFD. Accordingly, the Court should find that SRO Bates did not err in affirming the FOFD, and that plaintiff's behavior was unreasonable and impeded the DOE's ability to comply with its obligations under the IDEA.

Plaintiff's argument that the DOE cannot hold the IEP meeting in the parent's absence unless the parent affirmatively refuses to participate is a misunderstanding of the law. Plf.'s Mem. of Law at 16; Plf.'s Opp. at 11–12. Federal regulations provide that the DOE may proceed with the meeting if it "is unable to convince the parents that they should attend" and "must keep a record of its attempts to arrange a mutually agreed on time and place, such as…telephone calls…[and] copies of correspondence…." 34 C.F.R. § 300.322(d). "The IDEA does not require

the presence of a parent member and the parent member's absence cannot, therefore, be considered a procedural defect under the federal statute." Bd. of Educ. of the City Sch. Dist. of City of New York v. Mills, No. 03-CV-50, 2005 WL 1618765, at *5 (S.D.N.Y. July 11, 2005).

Plaintiff also argues that her conduct is "belied by defendants' actions, or inactions," noting that the CSE did not include the location of the IEP meeting in its April 30, 2018 notice and did not email her when unable to leave voice messages. Plf.'s Mem. of Law at 3, 14–17. First, the CSE's notice dated April 27, 2018 includes the location of the IEP meeting, and plaintiff could have contacted the CSE to confirm the location. R. at 1150–52. Second, the CSE's decision to use one method of communication over another is not a failure to comply with the IDEA. GB, 145 F. Supp. 3d at 257. Even if the CSE is obliged to use all available communication methods, which it is not, it is unclear whether plaintiff ever provided her email address to the CSE. R. at 1103. Moreover, plaintiff's letter dated April 19, 2018 notes that she preferred communications by email or regular mail. The CSE mailed notices in English and Spanish, plaintiff's native language, and called plaintiff on multiple occasions to confirm her participation at the IEP meeting. Any of the CSE's alleged shortcomings do not obviate plaintiff's own responsibilities in the IEP process. Erde v. Banks, No. 21-CV-9285, 2022 WL 18461297, at *7 (S.D.N.Y. Dec. 28, 2022), report and recommendation adopted, No. 21-CV-9285, 2023 WL 373156 (S.D.N.Y. Jan. 24, 2023). "The duty to take steps to find a mutually agreed on time assumes good faith attempts to agree by both sides." Mr. "M" ex rel "K.M." v. Ridgefield Bd. of Educ., No. 3:05-CV-584, 2007 WL 987483, at *6 (D. Conn. Mar. 30, 2007).

Plaintiff's contention that she has a "right" under the IDEA and New York law to request a physician's in-person attendance misunderstands the law and is unpersuasive. Plf.'s Mem. of Law at 15. State regulations permit a physician's attendance "if specifically requested in writing

16

by the parent...at least 72 hours prior to the [CSE] meeting" but do not require that the physician attend in person or grant the parent the right to refuse to attend a meeting if the physician does not attend in person. 8 N.Y.C.R.R. § 200.3(a)(1)(vii). Indeed, 8 N.Y.C.R.R. § 200.5(d)(7) explicitly provides that the CSE can "use alternative means of participation, such as videoconference or conference telephone calls." Plaintiff's insistence on a physician's in-person participation at the IEP meeting is not only without basis but is undermined by her own failure to participate. Her request appears to be a "a tactic designed to stymie the DOE's effort to create IEPs for the students." Neske, No. 21-CV-10363, 2022 WL 3290561, at *4.

Finally, plaintiff contends that if a school district concedes that it did not provide a FAPE, it must pay for the child's education. Plf.'s Mem. of Law at 23. However, even where the DOE has conceded that a student was denied a FAPE, the court must review the record separately in weighing the equities. Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist., 368 F. Supp. 2d 313, 328–329 (S.D.N.Y. 2005) (separately weighing the equities after finding the district had denied the student a FAPE); N.R. ex rel. T.R. v. Dep't of Educ. of City Sch. Dist. of City of New York, No. 07-CV-9648, 2009 WL 874061, at *7 (S.D.N.Y. Mar. 31, 2009) (finding defendant had conceded it denied the student a FAPE and separately finding that plaintiff had not acted "with the requisite level of unreasonableness" to be denied on equitable grounds). As noted in Donohue, "[t]here would be no need for a third prong [under the Burlington-Carter test]—the equities—if it were the case that a finding of a denial of FAPE and an appropriate unilateral placement (the first two prongs) precluded denial or reduction of reimbursement costs for families." No. 20-CV-1942, 2021 WL 4481344, at *10 n.4.

Based on the undisputed facts in this case, the Court should find that SRO Bates did not err in affirming IHO Lushing's determination that the equities warrant a reduction of the tuition

award for J.C.M.'s attendance at iBrain, and in finding that a 33% reduction of the full tuition

cost was reasonable and within IHO Lushing's sound discretion. L.K. v. New York City Dep't of

Educ., 674 Fed. App'x 101, 101 (2d Cir. Jan. 19, 2017) (summary order) ("Total reimbursement

will not be appropriate if the court determines that the cost of the private education was

unreasonable." (quoting Carter, 510 U.S. at 16)); M.W. ex rel. S.W. v. New York City Dep't of

Educ., 725 F.3d 131, 139 (2d Cir. 2013) (Noting that in determining whether the reduction

amount is reasonable, the Court is "further restrained by [its] lack of specialized knowledge and

educational expertise." (internal quotation marks, citation and alterations omitted)); see also

Donohue, 2021 WL 4481344, at *11 (deferring to the state officer's review and the "well-

reasoned analysis" of the IHO decision based on the parent's conduct).[11]

## CONCLUSION

Accordingly, I respectfully recommend that plaintiff's motion for summary judgment

should be denied, and defendant's cross-motion should be granted.

---

[11] Plaintiff also requests attorney's fees. Plf.'s Mem of Law at 24. As plaintiff is not the prevailing party in this action, plaintiff's request for attorneys' fees should be denied.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Such objections shall be filed with the Clerk of the Court.

Any request for an extension of time to file objections must be made within the fourteen-day

period.  Failure to file a timely objection to this Report generally waives any further judicial

review.  Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002);

Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474

U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: May 15, 2023
       Brooklyn, New York